**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **DAWN CHISM,** | : | CIVIL ACTION |
| *Plaintiff,* | : | |
| | : | |
| v. | : | No. 22-00885 |
| | : | |
| **STATE FARM FIRE AND** | : | |
| **CASUALTY COMPANY** | : | |
| *Defendants.* | : | |

<u>**MEMORANDUM**</u>

**Kenney, J.**                                                                    **September 21, 2022**

On February 8, 2022, Plaintiff Dawn Chism brought four counts in the Court of Common Pleas of Philadelphia County against Defendant State Farm Fire and Casualty Company ("State Farm") alleging Breach of Contract (Count I), Bad Faith (Count II), Unfair Trade Practices and Consumer Protection Law (Count III), and Deceit (Count IV).  ECF No. 1, Ex. A.  The case was removed to this Court on March 9, 2022 (ECF No. 1) and following a meet and confer between the parties, Counts II, III, and IV were dismissed.  ECF No. 9.  As to Count I, Plaintiff alleges that Defendant was contractually obligated to fully reimburse the expenses associated with water loss pursuant to Plaintiff's homeowners' insurance policy with State Farm.  *Id.*  According to Plaintiff, State Farm's failure to pay puts it in breach of the parties' contract.  *Id.*  Presently before the Court is Defendant's Motion for Summary Judgment (ECF No. 19), Plaintiff's Response in Opposition (ECF No. 21), and Defendant's Reply in Support (ECF No. 22).  For the reasons set forth below, this Court will **GRANT** Defendant's Motion for Summary Judgment (ECF No. 19) as to Count I.  An appropriate order will follow.

I. __BACKGROUND__

      Ms. Chism is the owner of a split-level home (the "Property").  ECF No. 21, Ex. A.  At all relevant times, the Property was insured under State Farm Policy 38-EX-R867-7 (the "Policy").  ECF No. 19, Ex. C.  The Policy provides coverage for "accidental direct physical loss" to the Property unless otherwise excluded.  *Id.* at 41.  Among the exclusions is loss to the Property "that would not have occurred in the absence of . . . water or sewage below the surface of the ground" such as "water or sewage that . . . seeps or leaks through a building structure."[1] *Id.* at 45–46.  The Policy further provides that such losses will not be paid for regardless of: (a) "the cause of the excluded event;" (b) "other causes of the loss;" (c) "whether other causes acted concurrently or in any sequence with the excluded event to produce the loss;" or (d) "whether the event occurs abruptly or gradually, involves isolated or widespread damage, occurs on or off the residence premises, arises from any natural or external forces, or occurs as a result of any combination of [the excluded events]."  *Id.*

      The Property is made up of three levels.  The "first level," which is located directly through the front door, contains a home office, living room, dining room, kitchen, bathroom, laundry room, and family room.  ECF No. 19, Ex. D at 5–6.  The "second level" contains two bedrooms and two bathrooms.  *Id.*  Finally, there is a "basement level" which is at least partially below ground.  *Id.*  Ms. Chism sought to convert the basement into an art studio, setting the facts of the instant case into motion.  *Id.* at 8.

      In July 2020, Ms. Chism hired BQ Basements to install a French drain in the basement to eliminate any dampness from the contemplated art studio.  *Id.* at 8–9.  However, on July 21,

---

[1] "Building structure" is defined as the foundation supporting the structure including, *inter alia*, basement walls.  ECF No. 19, Ex. C at 31.

2020, BQ Basements informed Ms. Chism that they could not proceed with installing the French drain because of black water damage on the basement wall. *Id.* Prior to July 21, Ms. Chism was unaware of any plumbing-related issues in the basement. *Id.* The following day, Ms. Chism hired FKRIV Plumbing & Heating ("FKRIV Plumbing") to open the basement wall to locate the broken sewer line. *Id.* at 11–12. The plumber excavated the floor on the first level and a cinderblock wall in the basement of the Property to access the impacted pipes. *Id.* Ms. Chism filed a claim with State Farm shortly thereafter. ECF No. 1, Ex. A ¶ 12. Ms. Chism's claim and her subsequent appeals were denied by both State Farm and its subcontractor, Hartford Steam Boiler, throughout late 2020. *Id.* at 5–8. Ms. Chism maintains that State Farm breached its contract by failing to pay for costs associated with the pipe repairs.

On August 7, 2022, State Farm filed a Motion for Summary Judgment (ECF No. 19). Ms. Chism filed a Response in Opposition (ECF No. 20) on September 2, 2022. State Farm submitted a Reply (ECF No. 22) on September 6, 2022. This issue has been fully briefed and is ripe for decision.

## II.    STANDARD OF REVIEW

A district court "shall grant summary judgment if the movant shows that there is no genuine issue as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Additionally, "[s]ummary judgment is appropriate when 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.'" *Wright v. Corning*, 679 F.3d 101, 103 (3d Cir. 2012) (quoting *Orsatti v. New Jersey State Police*, 71 F.3d 480, 482 (3d Cir. 1995)). A fact is "material" if it "might affect the outcome of the suit under the governing law." *Anderson v.*

*Liberty Lobby, Inc*. 477 U.S. 242, 248 (1986).  There is a genuine issue of material fact if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.*

The party moving for summary judgment has the initial burden "of informing the district court of the basis for its motion, and identifying those portions of the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, which it believes demonstrate the absence of a genuine issue of material fact."  *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986) (internal quotation marks omitted).  Once the moving party has met this burden, the non-moving party must counter with "'specific facts showing that there is a genuine issue for trial.'"  *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) (citation omitted); *see also* Fed. R. Civ. P. 56(c).

The non-movant must show more than the "mere existence of a scintilla of evidence" for elements on which the non-movant bears the burden of production.  *Anderson*, 477 U.S. at 252 (1986).  The non-movant opposing a motion for summary judgment may not "rely merely upon bare assertions, conclusory allegations or suspicions." *See Fireman's Ins. Co. v. DuFresne*, 676 F.2d 965, 969 (3d Cir. 1982).  Additionally, the non-moving party "cannot rely on unsupported allegations, but must go beyond pleadings and provide some evidence that would show that there exists a genuine issue for trial."  *Jones v. United Parcel Serv.*, 214 F.3d 402, 407 (3d Cir. 2000).  Moreover, arguments made in briefs "are not evidence and cannot by themselves create a factual dispute sufficient to defeat a summary judgment motion." *Jersey Cent. Power & Light Co. v. Township of Lacey*, 772 F.2d 1103, 1109–10 (3d Cir. 1985).

When determining the existence of a genuine issues of material fact, the court must "examine the evidence of record in the light most favorable to the party opposing summary judgment and resolve all reasonable inferences in that party's favor." *Wishkin v. Potter*, 476 F.3d 180, 184 (3d

4

Cir. 2007).  The court need only decide whether "a fair-minded jury could return a verdict for the plaintiff on the evidence presented."  *Anderson*, 477 U.S. at 252.  "Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no 'genuine issue for trial'" and the court should grant summary judgment in favor of the moving party. *Matsushita Elec. Indus. Co.*, 475 U.S. at 587 (citation omitted).

## III.   DISCUSSION

State Farm asserts that there is no genuine issue for trial as to: (i) whether the losses incurred were "accidental," and thus covered by the Policy; and (ii) whether the losses incurred resulted from water or sewage below the surface of the ground and are therefore excluded from the Policy's coverage.  ECF No. 19 at 10–13.  In response, Ms. Chism provides only conclusory allegations without evidentiary support.  Accordingly, State Farm is entitled to summary judgment as to Ms. Chism's only remaining claim.

### a.   Covered Losses

As the Plaintiff, Ms. Chism bears the burden of proving that her loss falls within the Policy's affirmative grant of coverage.  *Koppers Co., Inc. v. Aetna Cas. & Sur. Co.*, 98 F.3d 1440, 1446 (3d Cir. 1996); *see also State Farm Fire & Cas. Co. v. Estate of Mehlman*, 589 F.3d 105, 110 (3d Cir. 2009).  Ms. Chism mischaracterizes the evidence and makes conclusory allegations unsupported by the record; she has therefore failed to meet her burden.

First, Ms. Chism characterizes the Policy as providing "all risk" coverage (ECF No. 21 ¶ 8) without pointing to any purported "all risk" provision in the Policy itself.  Presumably, Ms. Chism is referring to the "losses insured" section of the Policy.  On its face, however, the losses insured section of the Policy provides coverage only for "accidental direct physical loss" rather than "all risks."  ECF No. 19, Ex. C at 41.  Despite the parties' differing perspectives, the

Policy's coverage of "accidental direct physical loss," rather than "all risks," is clearly stated and unambiguous. *Northbrook Ins. Co. v. Kulijan Corp.*, 690 F.2d 368, 372 (3d Cir. 1982) ("A provision of an insurance policy is ambiguous if reasonably intelligent [persons] on considering it in the context of the entire policy would honestly differ as to its meaning."). Because clear and unambiguous terms of an insurance policy are given their "plain and ordinary meaning," the Policy's language is controlling rather than Ms. Chism's mischaracterization of the same. *See id.*

Second, to the extent that Ms. Chism recognizes that only accidental direct physical loss is covered by the Policy, she relies on conclusory assertions without factual support. Under Pennsylvania law, which is controlling here, an "accident" in the context of insurance coverage provisions is "an unexpected and undesirable event occurring unintentionally." *Donegal Mut. Ins. Co. v. Baumhammers*, 595 Pa. 147, 158 (2007); *see also Estate of Mehlman*, 589 F.3d at 111 ("An accident, simply stated, is merely an anticipated event.") (quoting *Brenneman v. St. Paul Fire & Marine Ins. Co.*, 411 Pa. 409, 413 (1963)). The "key term in the definition of the 'accident' is 'unexpected' which implies a degree of fortuity." *Baumhammers*, 595 Pa. at 158 (quoting *Kvaerner Metals Div. of Kvaerner U.S., Inc. v. Commercial Union Ins. Co.*, 908 A.2d 888, 898 (Pa. 2007)). Not every undesirable occurrence of homeownership is legally considered an accident. Indeed, "an accident is the antithesis of something likely to occur, foreseeable in due course." *Casper v. Am. Guarantee & Liab. Ins. Co.*, 408 Pa. 426 (1962); *see also Lower Paxton Twp. v. U.S. Fidelity & Guaranty Co.*, 383 Pa. Super. Ct. 558, 567 (1989) ("The term accident within the meaning of an insurance policy is . . . the opposite of something likely to occur, foreseeable in due course."). For example, an injury "is not 'accidental' if [it] was the natural and expected result of the insured's actions." *Baumhammers*, 595 Pa. at 158. Similarly, unexpected occurrences caused by *inaction* may qualify as accidental. *See id.* (an "extraordinary

shooting spree," killing several people, embarked upon by Plaintiffs' son could not "be said to be the natural and expected result" of Plaintiffs' failure to procure adequate mental health treatment for son, confiscate his handgun, or notify authorities that son possessed a handgun); *see also Erie Ins. Exch. v. Muff*, 2004 Pa. Super. Ct. 177, ¶ 21 (2004) (insured babysitter's failure to take proper precautions, prevent possible harm, or provide proper care, which resulted in a child's death, was an accident); *see also Nationwide Mut. Fire Ins. Co. of Columbus v. Pipher*, 140 F.3d 222, 226 (3d Cir. 1998) (murder attributable to insured's failure to install apartment doors was not expected from the perspective of the insured party and was therefore accidental). Conversely, leaking pipes and resultant water seepage is "likely to occur [and] foreseeable in due course" of homeownership. *See Lower Paxton Twp.*, 383 Pa. Super. Ct. at 567; *McMahon v. State Farm Fire & Cas. Co.*, No. 06-3408, 2007 WL 1377670, *4 (E.D. Pa. May 8, 2007) ("Plumbing does not last indefinitely, and pipes need to be replaced when they wear out."). Here, the Policy "insure[d] Plaintiffs against unexpected physical damage to their house." *Id.* (analyzing the plain and ordinary meaning of "accidental direct physical loss"). Without additional allegations or evidentiary support, routine upkeep is generally not unexpected physical damage.

Ms. Chism counters only that the water seepage "was certainly not expected nor in the usual cause of things." ECF No. 21 ¶ 6. At the summary judgment stage, Ms. Chism's brief and conclusory assertion is insufficient. *See Jones*, 214 F.3d at 407 (finding a party opposing summary judgment may not "rely on unsupported allegations but must go beyond pleadings and provide some evidence that would show that there exists a genuine issue for trial"). Ms. Chism has not provided "'specific facts showing that there is a genuine issue'" as to whether the plumbing issue was unexpected, unforeseeable, or fortuitous in any way. *Matsushita Elec.*

*Indus. Co.*, 475 U.S. at 587.  Indeed, in her deposition Ms. Chism indicated that the work was merely preventative because the wall "was totally dried," there were "no problems," and "[i]t was more prevented" [*sic*].  ECF No. 19, Ex. D at 23–24.  Ms. Chism's own words show that the pipe replacement was a routine form of home maintenance, rather than due to some accidental or unexpected event.  Perhaps Ms. Chism did not anticipate repairing the pipes in question that very day.  However, a "broken pipe is not an unusual or unexpected loss for a homeowner"[2] and a conclusory statement that the broken pipe was "not expected nor in the usual cause of things," without specific factual support, does not make it so.  *McMahon*, 2007 WL 1377670, at *4 (E.D. Pa. May 8, 2007).  Presumably, there are scenarios in which a broken pipe could be the result of an accident.  On the record here, however, there is simply no evidence from which to construe that the broken pipe was due to anything other than foreseeable deterioration.  There are no genuine disputes as to whether the loss was accidental (it was not), therefore summary judgment is appropriate because the loss does not fall within the Policy's affirmative coverage.

      **b.  <u>Exclusions</u>**

      Because Ms. Chism has failed to show that her loss falls within the Policy's coverage, the Court need not reach the Policy's exclusions.  However, summary judgment is appropriate even assuming *arguendo* that the loss is affirmatively covered by the Policy.  If the Plaintiff proves that the loss is affirmatively covered by the Policy, the burden shifts to the insurer to prove the applicability of any exclusions or limitations on coverage as an affirmative defense.  *Koppers Co., Inc.*, 98 F.3d at 1446.  State Farm has established that Ms. Chism's claim is not covered because it falls under at least one of the Policy's exclusions.  Specifically, Section 2(c)(8) of the

---

[2] A finding otherwise would transform the insurance policy into a warranty applicable for any standard repairs that are part and parcel of homeownership.

Policy provides that State Farm "will not pay for . . . any loss that would not have occurred in the absence of . . . water or sewage below the surface of the ground" such as "water or sewage that . . . seeps or leaks through a building structure." ECF No. 19, Ex. C at 45. The Policy further provides that such losses will not be paid for "regardless of: (a) the cause of the excluded event; or (b) other causes of the loss; or (c) whether other causes acted concurrently or in any sequence with the excluded event to produce the loss; or (d) whether the event occurs abruptly or gradually, involves isolated or widespread damage, occurs on or off the residence premises, arises from any natural or external forces, or occurs as a result of any combination of [the excluded events]." *Id.*

Ms. Chism claims that the basement level is "not entirely below ground level but rather the upper approximate 3 feet is above ground level." ECF No. 21 ¶ 4. This detail, if true, is immaterial. The Policy excludes loss that is the result of water or sewage below the surface of the ground that seeps through the home, which occurred here. Ms. Chism provided notice to State Farm that "water was coming through a basement wall." ECF No. 1, Ex. A ¶14. Photographic evidence clearly shows that at least some of the impacted pipes were located below ground. *See* ECF No. 19, Ex. E at 4–6, 8, 10–13. An invoice for plumbing services also lists "dig down 2ft to access broken pipe" as a service provided. *Id.* at 3. Moreover, the black water marks were located where the basement wall meets the basement floor. *Id.* at 8; ECF No. 21, Ex. B. In other words, the effected pipes and basement wall were not located in the "upper three feet" of the basement level which, according to Ms. Chism, are above ground level. As such, there is no genuine dispute as to whether the loss is attributable, at least in part, to "water or sewage *below the surface of the ground*" such as "water or sewage that . . . seeps or leaks through a building structure." ECF No. 19, Ex. C at 45. Ms. Chism's claim therefore falls

within an exception of the Policy, and summary judgment would still be proper even if the Policy was not limited to accidental loss.

IV.      <u>**CONCLUSION**</u>

For the reasons stated above Defendant's Motion for Summary Judgment (ECF No. 19) will be **GRANTED**.

**BY THE COURT:**

**/s/ Chad F. Kenney**

_____

**CHAD F. KENNEY, JUDGE**